IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:24-MJ-46-1 |
| DAMIEN LAMAR HOLLOWAY II, a/k/a "Bam," | |
| *Defendant*. | |

### RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR BOND

The United States of America respectfully moves the Court to uphold its February 27, 2024, Order detaining the defendant, Damien Lamar HOLLOWAY II, pending trial.

Following this Court's determination that the defendant had not overcome the presumption in favor of detention in this case (Dkt. No. 19), the defendant has now identified a new third-party custodian and seeks release to them (Dkt. No. 25). The defendant's motion argues that the proposed third-party custodian, electronic monitoring, pretrial supervision, and substance abuse testing will assure the safety of the community and the defendant's appearance for court proceedings. In light of the overwhelming evidence of the defendant's guilt of the charged offense, the seriousness of the charged conspiracy to distribute fentanyl, and the circumstances of the offense, the government believes that the defendant release poses a risk to the safety of the community and a risk of flight. Accordingly, the government urges the Court to deny the defendant's motion.

### BACKGROUND

1. On February 16, 2024, the Honorable William E. Fitzpatrick, United States Magistrate Judge for the Eastern District of Virginia, issued an arrest warrant for the defendant

1

based on a probable affidavit charging the defendant with conspiracy to distribute 400 grams or more of a mixture and substance containing fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 846. This offense carries a mandatory minimum sentence of 10 years' imprisonment, and up to a maximum of life imprisonment. As such, there is a presumption, subject to rebuttal by the defendant, that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A).

2. The complaint is based on an investigation into a drug distribution conspiracy involving the defendant and his co-defendant in which the government alleges that they conspired to distribute pressed pills containing fentanyl in the Eastern District of Virginia and elsewhere. The investigation revealed that the defendant was the source of supply for his co-defendant, culminating in two (2) controlled purchases of over four hundred (400) grams of fentanyl from the defendant. These transactions were audio and video recorded.

3. On February 23, 2024, the defendant was arrested in the Eastern District of Virginia. Contemporaneously, law enforcement agents executed a search warrant on the residence where the defendant was residing. The search of the residence recovered, among other items, suspected marijuana, a large amount of U.S. currency, and three (3) loaded firearms.

4. On February 27, 2024, following the completion of a Pretrial Services Bond Report ("PTSR"), a preliminary hearing and detention hearing were held before the Honorable Ivan D. Davis, United States Magistrate Judge for the Eastern District of Virginia. (Dkt. No. 18). After reviewing the PTSR, the affidavit in support of criminal complaint, and hearing the testimony of Special Agent Michael Regalbuto of the Federal Bureau of Investigation, the Court found that the defendant had not rebutted the presumption of detention under 18 U.S.C. § 3142(e)(3)(A) and

ordered the defendant held without bond. (Dkt. No. 19). The Court also found sufficient probable cause for the alleged violation. (Dkt. No. 18).

5. On March 8, 2024, the defendant, through substituted counsel, filed the instant Motion for Bond. (Dkt. No. 25).

## LAW APPLICABLE TO DETENTION

6. The United States urges this Honorable Court to uphold its February 27, 2024, Order of Detention (Dkt. No. 19) as there is no condition or combination of conditions that will reasonably assure the defendant's appearance and reasonably assure the safety of any other person and the community.

7. The Bail Reform Act of 1984 creates a presumption in favor of detention "if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." 18 U.S.C. § 3142(e)(3)(A). Once the presumption is triggered, failure of the defendant to produce evidence as to either the danger or flight prongs of § 3142 will result in his detention. *See, e.g.*, *United States v. Reuben*, 974 F.2d 580, 586, (5th Cir. 1992), *cert. denied*, 507 U.S. 940 (1993). If the Court were to find that the defendant rebutted the presumption, and the burden shifted back to the government, the government need only prove either:

    a. The defendant's risk of flight by a preponderance of the evidence, *see United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001); or

    b. The risk of harm to any person or the community by clear and convincing evidence, *see* 18 U.S.C. § 3142(f)(2)(B).

"For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance or the safety of others or the community, is sufficient; both are not required." *Stewart*, 19 F. App'x at 48.

      8.    "Detention hearings are an informal proceeding, and the evidence presented is not governed by the Federal Rules of Evidence." *United States v. Duncan*, 897 F. Supp. 688, 690 (N.D.N.Y. 1988); 18 U.S.C. § 3142(f)(2). The government may proceed in a detention hearing by way of proffer. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C.Cir.1996) (per curiam) (citing *United States v. Gaviria*, 828 F.2d 667, 669 (11th Cir. 1987); *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986); *United States v. Acevedo-Ramos*, 755 F.2d 203, 206-07 (1st Cir. 1985)).

      9.    In determining whether to detain the defendant, the Court may consider the finding of Congress that drug offenders pose a special risk of flight and dangerousness. *Reuben*, 974 F.2d at 586. In determining whether there are conditions of release that will reasonably assure the defendant's appearance as required and that will protect the safety of the community, the Court must consider: (1) "the nature and circumstances of the offense charged," including whether the offense is a "crime of violence"; (2) "the weight of the evidence against" the defendant; (3) "the history and characteristics of" the defendant, including the defendant's physical and mental condition; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by" the defendant's release. 18 U.S.C. § 3142(g).

## **REVIEW OF DETENTION ORDER**

      10.    The Bail Reform Act, and specifically 18 U.S.C. §§ 3142 and 3145 govern the reopening and review of a magistrate judge's detention order like the one at issue here. Two sections of the Bail Reform Act contemplate modification of a detention order. The first section is

18 U.S.C. § 3142(f). Before a defendant can be detained, a judicial officer must hold a detention hearing in accordance with 18 U.S.C. § 3142(f). The last sentence of this subsection provides that

> [t]he hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f). By its terms, this statutory section provides for the reconsideration of a detention order only when there is new evidence that is materials to the decision of whether detention is appropriate.

11. The second section that provides for the modification of a detention order is 18 U.S.C. § 3145(b), which states:

> (b) Review of a detention order.—If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

18 U.S.C. § 3145(b). In this case, an Article III Judge siting in the Eastern District of Virginia is the "court having original jurisdiction over the offense." Notably, neither the statute nor the rules provide for a second, or successive detention hearings.

12. They do, however, provide for the reopening of a detention hearing, but only on a judicial finding that "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person and the safety of the community." 18 USC § 3142(f).

5

## ANALYSIS

**A.     The Defendant Is Not Entitled to a Second Detention Hearing Based on Identification of a "New" Third Party Custodian, Known to the Defendant at the Time of the Original Hearing**

13.     As an initial matter, under the express terms of the applicable rules, it appears the defendant is not entitled to multiple and successive detention hearings before this Court based on information known to the defendant at the time of the February 27, 2024, detention hearing. The only possible "new" information raised by the defendant in his motion for bond is the proposal of a different third-party custodian, "Candice Tinner."

14.     The test for whether proffered information is new information previously unknown to the defendant is whether the information was unknown at the time of the hearing, not whether a witness's willingness to testify was unknown to the movant. *United States v. Ward*, 235 F. Supp. 2d 1183 (N.D. Okla. 2002).

15.     The defendant's motion fails to explain who Ms. Tinner is, her relationship with the defendant, where she resides, or any other information regarding Ms. Tinner other than the fact that she resides in Stafford, Virginia, and has no criminal history.

16.     The information regarding Ms. Tinner does not appear new, and in any event, the United States respectfully submits it does not have a material bearing on the issue of whether conditions of release will reasonably assure the appearance of the defendant and the safety of the community. *See, e.g.*, *United States v. Hare,* 873 F.2d 796 (5th Cir.1989) (affirming refusal to reopen hearing because "testimony of Hare's family and friends is not new evidence"); *United States v. Dillon*, 938 F.2d 1412, 1415 (1st Cir.1991) (per curiam) (affirming district court's refusal to reopen hearing where defendant's evidence consisted of affidavits and letters from people who knew him attesting to his likelihood of appearing and non-dangerousness; "this information was available to appellant at the time of the [original] hearing"); *but see United States v. Ward*, 63 F.

Supp. 2d 1203, 1207 (C.D. Cal. 1999) (finding that the full extent of the defendant's potential financial sureties was not fully known and available to him at the detention hearing, and denying the defendant's request to vacate the detention order).

17. The Court's February 27, 2024, Order of Detention was not based on the unsuitability of the defendant's proposed third-party custodian (which at the time was his mother) but rather on the Court's assessment of the defendant's risk to the community and risk of flight combined with the unrebutted presumption of detention. Accordingly, merely changing the proposed third-party custodian to a different individual does nothing to address the grounds for detention in this case.

18. Furthermore, in terms of judicial economy, such a process would allow the defendant infinite bites at the apple. For example, if the defendant were again detained by the Court following another detention hearing on his motion, he could once again move to reopen, proposing any number of a possibly never-ending list of third-party custodians. The Honorable F. Bradford Stillman, United States Magistrate Judge for the Eastern District of Virginia, previously recognized just that, stating that "[t]he Bail Reform Act, 18 U.S.C. §§ 3141–56, contemplates that a defendant will get a maximum of two (2) detention hearings, or 'two bites at the apple,' in the district court." *United States v. Cannon*, 711 F. Supp. 2d 602, 607 (E.D. Va. 2010).

    **B.**     **The Defendant Has Still Not Rebutted the Presumption of Detention**

19. Even if the defendant had an available means of recourse before this Court, the United States contends that defendant should be detained because there continues to be no condition or combination of conditions that will reasonably assure his appearance and reasonably assure the safety of any other person and the community.

### i. *Weight of the Evidence*

20. First, the weight of the evidence is strong. The defendant personally distributed approximately five thousand (5,000) pressed pills suspected to contain fentanyl to his co-defendant.[1] These transactions were audio and video recorded. Further, the defendant's co-defendant identified the defendant as a source of supply for counterfeit pills containing fentanyl and law enforcement recovered text messages between the defendant and his co-defendant discussing drug trafficking on prior occasions during a consensual search of the co-defendant's cellphone.

21. Further, as explained by Special Agent Michael Regalbuto in his testimony before this Court during the preliminary and detention hearings on February 27, 2024, the search of the defendant's residence pursuant to a search warrant recovered additional narcotics, including large amounts of marijuana, and multiple firearms, including firearms discovered in close proximity to narcotics and found loaded with a round in the chamber in what appeared to be a child's playroom.

22. During the pendency of the charged conspiracy, the defendant even became aware of the likelihood of law enforcement scrutiny of his actions but remained undeterred. As the agent testified to at the February 27 hearings, in January 2024 the defendant informed his co-defendant that an employee at the apartment complex where the defendant was residing under a false name alerted the defendant to law enforcement's investigation. The defendant then moved out of the apartment and into the residence where he was arrested on February 23. Despite believing that law enforcement was investigating him, he then proceeded to sell fentanyl pills to the co-defendant on

---

[1] Since the filing of the affidavit in support of criminal complaint, subsequent laboratory analysis confirmed that the approximately 2,000 pills that the defendant sold to his co-defendant on or about January 29, 2024, contained approximately 213 grams of fentanyl and the approximately 3,000 pills sold on or about February 8, 2024, contained approximately 319 grams of fentanyl, placing the defendant well above the 400-gram threshold for the charged conspiracy even only considering those pills he personally distributed. These lab results have been provided to the defendant's counsel.

8

two (2) separate occasions, a fact that the Court stated was of particular concern. The defendant's continued drug dealing, despite his belief of law enforcement scrutiny, show that his current charges are unlikely to deter him from continued criminal behavior.

23. The nature of the offense and weight of the evidence establish both the danger that the defendant poses to the safety of the community and a serious risk of flight. First, the Court must consider the danger of trafficking in illicit drugs in determining the defendant's danger to the community. *See United States v. Gibson*, 481 F. Supp. 2d 419, 423 (W.D. Pa. 2007). Fentanyl is one of the biggest threats to public health in the United States, including in Virginia: fatal drug overdoses are now the leading method of unnatural death in the commonwealth, and fentanyl caused or contributed to over 75% of those deaths in 2022.[2] Second, with such a strong case against the defendant, there is a substantial risk that he will flee rather than face a ten-year sentence.

      *ii.* ***Conditions of Release Cannot Meaningfully Reduce the Risk of Harm to the Community and the Serious Risk of Flight***

24. The defendant assures the Court that the proposed third-party custodian, electronic monitoring, pretrial supervision, and substance abuse testing will assure the safety of the community and the defendant's appearance for court proceedings. However, these conditions do little in this case to reduce the defendant's serious risk of harm to the community and nonappearance.

25. First, the conditions of release do not mitigate the risk of flight. As other courts have recognized "location monitoring is inadequate because ankle monitors can be removed and ensure only a reduced head start should a defendant decide to flee." *United States v. Wang*, No. 23 CR. 118-3 (AT), 2023 WL 4551637, at *3 (S.D.N.Y. July 14, 2023) (citing *United States v.*

---

[2] *See* Virginia Department of Health, *Fatal Drug Overdose Quarterly Report: 1st Quarter 2023* (July 2023), *available at* https://www.vdh.virginia.gov/content/uploads/sites/18/2023/07/Quarterly-Drug-Death-Report-FINAL-Q1-2023.pdf.

9

*Freeman*, No. 21 Cr. 88 (S.D.N.Y.), Bail Hr'g 5:4-6, Feb. 19, 2021. ECF No. 50 ("Anyone who knows the technology of electronic monitoring knows that it is far from foolproof."), and *United States v. Zarger*, No. 00 Cr. 773, 2000 WL 1134364, at *1 (E.D.N.Y. Aug. 4, 2000) (stating that electronic monitoring "at best ... limits a fleeing defendant's head start")). As such, location monitoring merely provides notice of, rather than preventing, flight in the first place.

26. More importantly, the risk to the safety of the community still exists, as there is little indication that the defendant will not succumb to the lure of selling deadly drugs for money.

27. The proposed conditions cannot meaningfully reduce the risk of the defendant's continued dealings with his co-conspirators. A number of coconspirators remain uncharged. The defendant therefore has the incentive and access to his associates that would enable him to continue participating in the distribution of controlled substances in order to make some savings before surrendering for a lengthy prison sentence. Home confinement will not prevent that as, in current times, the business of moving large quantities of deadly drugs can be accomplished largely from one's home over the Internet and via electronic devices. *See, e.g.*, *United States v. Elliott*, 546 F. Supp. 2d 643, 645 (S.D. Ind. 2008) (noting that "travel restrictions or a curfew would be meaningless in the face of a telecommunications network with associates that allows drug trafficking to continue from remote locations").

### C. CONCLUSION

Regardless of whether the defendant has identified a willing third-party custodian, the defendant cannot rebut the presumption that he should be detained pending trial, and, even if the Court were to find the presumption rebutted, the factors set out in 18 U.S.C. § 3142(g) weigh in favor of detention. Accordingly, the United States respectfully urges this Court to deny the defendant's motion for bond (Dkt. No. 25).

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____/s/_____
Edgardo J. Rodriguez
Assistant United States Attorney